Case No. 19-1180, et al. RadNet Management, Inc. doing business as Orange Advanced Imaging Petitioner v. National Labor Relations Board Ms. Cassetta Lammers for the Petitioner, Ms. Beard for the Respondent Good afternoon, Your Honors. May it please the Court, I'm Cassetta Lammers for RadNet Management, Inc. doing business in this case as six separate entities Anaheim Advanced Imaging, Garden Grove Advanced Imaging, Orange Advanced Imaging, La Mirada Imaging, West Coast Radiology, Irvine, and West Coast Radiology, Santa Ana, who I will refer to as a consolidated group as the employers in this case. The employers come before the Court today requesting that the Court deny enforcement of the National Labor Relations Board's underlying orders and request that this Court vacate the underlying representation proceedings in these cases. The two issues I'd like to spend the majority of my time on today are the fact that the Board has certified an invalid and inappropriate unit in this case, or multiple inappropriate units, and that the Board acted improperly when it chose to impound the ballots from six separate elections and to hold those ballots to be counted until after all six of those elections had occurred. There are other issues that are raised. Let me ask about that last issue. Sure. It seems to me that if you're right, that the ballot should not have been impounded. And if the remedy is to invalidate the elections that are at issue, that either the first election or the last election still ought not to be invalidated. So if your theory is that the problem was every election after the first was denied the information of knowing the tally of the first, then fine. Invalidate all the ones after the first. But the first was untainted. On the other hand, if your theory is that the problem is any election is invalid when its tally is not done immediately, then the last election on the second day is fine because its tally actually was done immediately. So am I right that at least the first or the last election has to be valid? And why? Our argument is more so the former than the latter of the two situations that you posit. But I don't think it's necessarily true that a first election, quote unquote, must be invalidated. Rather, I think we have to take the analysis back a step further and consider whether the regional director had alternatives that would have allowed for there not to be a succession of votes, one after the other, wherein each of the votes could have been conducted at the same time. And we don't deny that the regional director would have some level of discretion to make a determination like that. What we are saying. Why? You're saying that if you win on the merits, that the tally should have happened immediately after each election. Are you more or less conceding that the first election, I think it was La Mirada, should nevertheless not be invalidated? That would require our position to be that the only issue with the way that the regional director sequenced the votes was the fact that the subsequent elections and the subsequent voters didn't have the ability to know what happened in the elections that happened prior. I think the issue is that once you send it back to the regional director and you say, Mr. Regional Director, you have some discretion, but in an ideal world, you would conduct these so that they don't fall in a chain. Then I think you have to say, well, I don't, I don't know that we can say that La Mirada shouldn't also be invalidated because the question is one of, could the regional director have sequenced these and ordered them so that you wouldn't have had that problem at all? Your theory is that the real problem was in deciding to have all these elections at different times? No. The theory to be very clear is that the, that the regional director in deciding to have the elections at different times abused his discretion when he had the elections at different times and didn't count the votes after each election, which he very easily could have done. Let's assume I, and I'm not saying I do agree with you, but let's assume I agree with, with what you just said. It's fine to sequence them, but it wasn't fine to wait until the end to tally them all. Then, and let's assume, I think the reason is that it went against agency, went against the board's regulations to the, to the detriment of people in the later elections who didn't have the information that they would have had. But so all that's good for you. And let's assume I I'm on board with all that. Tell me why I should invalidate the first election at La Mirada. Because I think again, when you send this back to the regional director and say your, your discretion didn't extend this far, you need to give this another shot and doing it correctly, that all the elections should be reconsidered by the regional director. Perhaps now that he understands the limitation on his discretion, the region of the board would prefer to run all of the elections simultaneously. I do believe that that decision ultimately is one that the board could continue to exercise discretion over. That's the only reason. Now, from the practical standpoint of what our argument is, our argument is yes, that it is the sequencing and the failure to count. That is a irreparable harm to the. Can you explain to me the prejudice? I'm sorry, just what were you done? No, I was going to ask you exactly. Oh, sorry. I was going to ask exactly the same question. Yeah, there are two prejudices. And I think a third related point one prejudice runs to the employees as employees vote on whether they want to be represented by this union. It's relevant to them with this bargaining strength of that union is amongst these employers. And in this region, I think there is a related prejudice to the union and to the employer. And of course I represent the employer. So I would speak to the employer's prejudice in terms of the employer's free speech rights under the national labor relations act to communicate with employees about what's happening in these various elections involving similar groups of employees in the same union. And then I think aside from the question of prejudice, there's also a question of the, the authority of the agency to conduct itself in this manner. We're doing so as arbitrary and capricious. Statutory interest, I assume is just in a fair election, right? Statutory interest is in a fair election. However, the act does. What's unfair about structuring this in this way. I mean, you know, we have, we have a presidential election in which media organizations agree that they won't release any East coast results until the polls close on the West coast, precisely to deny the voters in on the West coast, the information you want, which is who won some related election. Nobody thinks that's unfair to that. California voter can't find out who won the New York election before they have to vote. So why is this any different? Well, I think that points to one of the more central paradoxes in this argument, which is that the board had already affirmed the regional director for found and the board has affirmed throughout that these were separate voting units. So this isn't one big national election. This isn't one vote with multiple boxes that are all going to count as part of the same result. And in fact, the board does have a history of impounding ballots in those types of cases. What they don't have is any history of doing that where you have separate bargaining units. And these are separate elections with separate bargaining. Separateness counts against you. I mean, maybe my presidential election analogy is a little bit off. The more accurate thing. If we focus on separateness is the California voters who are picking the governor of California. California don't know whom the New York voters picked to be governor of New York when they're voting. That's even prejudicial. It's true. And it's not true because I live in Georgia and the voters in Georgia knew what the election outcomes were when they went to the polls to decide about the voters in the two runoff elections. I think the point that we would be making is that there's no board precedent that mimics or parallels what you're describing as the agreement between media outlets or reporting outlets. Nothing like that exists in the board's procedures. And in fact, they're directly to the contrary. What they are saying is you shouldn't do this. You absolutely should vote count votes immediately after. There's no good reason for the regional director not to have done that in these cases. And there are clear harms. You had employees who, whose names were included in offers of proof given to the board saying, yes, I would have liked to know that information. This goes to the question of this union strength. I see my time has already expired. Don't worry about that. Did you have more follow-up? Just one more, which is if, if we agree with you that the voters have that interest in knowing what's happened in the other elections, would it have been an abuse of discretion to schedule all the elections simultaneously? I don't think we would have been in a position to argue that first of all, that's not what happened. So I'm speculating a little, but we would be, the employer would not be making this point about there being. Oh, we've lost your sound. Oh, you cut out. Can you hear us? I can hear you. Can you hear me? About 20 seconds ago. Okay. My apologies. It looks like it might've had to do with Bluetooth. Can you hear me now? Okay, great. So I think the point is that the regional director here acted to intentionally withhold information. He said, relying upon discretion, which was not unfettered a system that acted to intentionally withhold information from voters and intentionally muzzle the parties to these various proceedings from speaking, you know, between. You've made this general assertion that the prejudice to the employer, I don't know that you, you went with Stein prejudice to employees, but so you represent the employer and the prejudice to the employer. You mentioned was using Muslim free speech, right? That's correct. Anything more particular in the record about what your employer wanted to say and wasn't able to say. I think that the offers of spru of proof speak generally to the desire to communicate with employees about the results of the election. Cause you talked about sort of the union strength or whatnot. So it was a point to say, you know, the unions, the union lost two elections yesterday. They're not going to be that strong. Is that what the employer wanted to say? Potentially within the confines of the national labor relations act and what's considered lawful. I'm assuming, I'm assuming your client wants to do lawful speech. So the difficulty for you is that the union won all the elections on the first day. No, they won all, but they all won all but one, what you're missing in the record. And if you look at the board's answering brief, you can see that there were elections that were held that are not at issue in this case. If you turn to page 12 of the answering brief, and you don't have the vote tallies for the other elections, but there were other elections that I believe were held on, on both days. They're not at issue in this case because objections weren't filed, but there were other elections, some of which in which the employers prevailed. Which one was that? So if you look at page 12 of the answering brief, you'll see there are units a through, and then you'd have to turn to 13. You got eight through J two and the board here has listed out those units where the tally favored union representation in any other election where the union did not prevail is just listed as N a. Right. But the only, so the only one that might've been on the 24th would have been these professionals in Santa Ana. So it was a totally different unit. So a professional in Santa Ana, it would have come down to the question of a sonotone election with, which is an election that's run by the board. The election says not only the employees are asked, not only do you want to be in the unit, but do you want your unit to be combined? No, I'm just asking the folks at issue here, the MRI and radiologists, nuclear medicine. Thank you folks. They would have been in unit J two, right? So J two correct would have been nuclear medicine, MRI. That would have been true for all, except I believe the Santa Ana professional. So J one is the only one who wouldn't have had some contingent of employees who come under the question of the question of the supervisory or the, I'm sorry, the statutory guard analysis, which I'm happy to hear. I'm, I'm confused and you know, way more than I do. Let me try to phrase it simply. Did the, did J one include any MRI or nuclear medicine? No, I believe it would have been just nurses because the reason it was separated out, we could confirm this with the decision and direction of election, but I believe it was just nurses because they have to participate. Professionals have to elect to be included in a unit with technical employees. Okay. If you had a second point you wanted to argue, I think, I don't mean to cut you off if you have more to say on this, but you did want to touch, I think on the guard issue. Yes. And thank you. I'm happy to answer more questions about the question of impounding the ballots, because I do think that it presents a legitimate issue for the board. However, I do want to make sure that I do mention the fact that the certified units violate the national labor relations act, because of course, we don't even get to the question of the impounding of the ballots. If this court were to determine that section nine B three of the act did not permit the board to entertain these petitions or certify these bargaining units on that question. As you all know, from reviewing the brief section, nine B three of the act prevents non-guard employees from being combined in units with guard employees. Nine B three of the act also defines what a guard is. A guard is an employee who's employed to enforce the enforce against employees and other people rules that protect the employer's property and to protect the safety of persons, including other employees on the employer's property. And there's been. Law clerks are charged with. Ensuring that. They don't let anybody in and they don't. See anybody else letting someone into secure areas of the courthouse. And they, they have security. At least one of them has a security button in their office to call for assistance. If there's a break in, they're charged with all kinds of responsibilities for maintaining confidentiality. Of information for not disclosing information about. That affects my security. So they have a lot of responsibilities on ensuring safety. Inside the courthouse. Putting aside that. Okay. Let's see. I'm going to apply right here, but let's assume it does. Let's assume I'm a minute. Administrative law judge. Are they guards? I don't think they are. And of course I would urge your employees and you, if you were the employer to develop a full factual record before a decision is made. I think it would weigh on the analysis. Because some of the. Instancy of the role of MRI technologists and nuclear medicine technologists. Yeah.    Because some of the. Instancy of the role of MRI technologists and nuclear medicine technologists would be removed. But I don't think that at the end of the day, you can avoid the fact that those individuals. At those locations are tasked. Not generally, but very specifically with protecting the employer's property. And also with protecting. Fellow employees and visitors. So it's not, it's not a general obligation.  It's not a general obligation to protect the employees and visitors from the harms that relate to their specific modality. So it is distinguishable. It's not a general. Obligation to safety. It's very specified. And the evidence of that is borne out by the record that was. This is a. This guard definition is. Include almost everybody. It's certainly, you know, It's not limited to my most traditional. Sense of what a guard is. And so. I got that the people at the metal detectors are guards. I get that. But it's a pretty malleable definition. So I'm trying. If you could articulate for me. Not in facts here, but articulate the legal rule of the test. That you would have us adopt. It would distinguish. Why the technicians at issue here are guard guards in a way that my law clerks who get security training and briefing. And have serious obligations about keeping court property as well as court personnel safe. Are different just with the legal. Definition of legal rule. I could apply in future cases. Sure. And I think that the answer to your question has to distill down from board precedent. Right. I mean, I could create a role, but it would be self-serving. So I think what we have to do is actually look at what the board has decided. And where they've drawn the lines and where the board has drawn the lines. There are a couple of, I think, key points. And I think that in this case, these employees meet those key points. You have to show that they are specifically. And pert and specifically tasked with protecting property. And protecting the people who are on. What does that mean? So I think that, you know, I would, I would not say that this is a bad thing. I would say that I would rather, like a general security training where everybody is told, like, this is where the fire alarm is. Doesn't quite cut the mustard, but rather somebody who's received, particularized and special training. To say, for example, you cannot enter zone four because your pacemaker might fly out of your body.  body. You cannot enter zone four because your pacemaker might fly out of your body. Thereby injuring you and potentially other people. Those are distinguishable. I think this relates back to the board tries to make a similar point. And so everybody, everybody at the facility knows not to let someone in zone four. There's a really big difference between a janitor being told to close a door. And an employee who knows it is their job. Their specific job. To make sure that zone four is approached as a nuclear medicine technologist. It is your job. Your specific job to make sure that radioactive isotopes that could literally poison the water supply of a town. Do not leave the hot lab within the nuclear. The nuclear medicine facility or department. So there's a particular lies. And specific. Safety function that these individuals. Fulfill the other thing, the board. If you wouldn't mind. Sure. Of course. Okay. And. J a two one, two Oh one. It talks about. Allowing security personnel into the MRI area. Does that mean that Radnet does have its own security guards at some of its facilities? The is it. It's a transcript from the hearing. I assume you're referencing. Yeah. It's your manual. J two Oh one refers to. It may be the case that there are facilities that have security. These manuals apply not only to the facilities that issue here, but a broad number of facilities. I think.  Does any of the facilities issue here have a security guard? There's no evidence in the record of that. And to my knowledge, they do not, I, I cannot recall that. You didn't put evidence into the record one way or the other. I don't recall that we did know the record's quite extensive, but I don't recall. And I was involved in the underlying proceedings, but I don't recall that they had. Security personnel and. I don't recall that there was a security person or any that had these again, when we're talking about specific. Security functions. Even if there were a security guard. It's my understanding from the evidence offered by Dr. Vartani, that those individuals wouldn't have access to many of these areas where these employees are tasked with policing security. Do my colleagues have any further questions? I have a follow-up on that. Do you have JA 2 0 1 handy? I can make JA 1 2 0 2 0 1 handy. Yes. It while you're doing it. It refers to security guards and security personnel. Is. Is your position that those references are to. The texts. Or. Cause if not. I don't think that's accurate. I do see the reference you are both making to security personnel, police and guard screening. And two points in response. One. It's not clear to me. That these references relate to security personnel who are employed. So I don't think it's clear at all. The other thing I'll say is I'll note that the manual explicitly delineates the security function performed by the MRI technologist, as opposed to those security personnel. It says the police and security personnel. It's not clear to me. It's not clear to me. That those security guards have to be screened. By the MRI personnel in order to enter. It is the function and the ever-present duty of the MRI technologist to enforce the security of those zones surrounding their work area. And that's that, you know, regardless of the presence of a security officer, that's their job. Their duties in that regard, they're ever present. They run in the background of any image they're, they're performing. They, the magnet is always running. The isotopes are always radioactive. It is indeed the case that these individuals do constitute guards. And therefore this is another reason why this case. The, the, the court must deny enforcement of the board's orders in these cases. I am happy to take more questions on, on either of those issues or any of the others that were raised by our briefing. I'm happy to take any questions that you may have. I don't know if I'm going to be able to answer everything, but I am over my time. So. I would ask for a moment on rebuttal. And I'm happy to proceed as you wish. Any further questions. We'll give you two minutes. Thank you. I'm Heather beard for the NLRB. And we're asking you to enforce the board's orders in full. I can start with the guard issue since if that's all right with your honors, given that that was what y'all were discussing. The first thing that I'd like to point out is yes, the board has given us guidance as to what the statutory language of nine B3 means. And it certainly is not. If there are other security guards, then we have a yes or no determination about these particular employees. And the key here is the board's decision. The board's decision in the Boeing case in which the principle is. Debated in our briefs is whether or not the person, the employee is employed as a guard. To. Enforced against employees and other persons. Rules to protect property, et cetera. That has been interpreted by the board as meaning the regular duties of the employees have to be such that what they do, that is guard-like is not minor and incidental to their duties. And what I don't want lost here is what the region. Well, director and the board was looking at is that these employees, regular duties are to scan patients for various diseases. And in the service of doing those scans, what they are doing is making sure that they do it in the best way possible for the patients and, and the. And for the hospital. And in this instance, the record evidence, which again is the burden on the party, trying to demonstrate that there should not be that these aren't guards. The burden there is to establish that they are guards employed. As guards under the acting here, the record evidence does not demonstrate that they are acting in the ways that would constitute guards in a way that is anything other than minor incidental to what their main duties are, that they're trained for, which is to do the scans of patients and to make sure that they get the best scan that they can for the doctor. Do you have to. Have authority over. Broader areas of the premises, the employers premises, than just where you are doing your other job as well. There's no delineated sort of standard. And in fact, the Boeing case makes clear that there are traditional guard, guard, like actions that employees are doing in this case. We only have in the facts that these MRI technicians and the nuclear pet technicians are, they do sort of in their own area. They're making sure in the context of their duties with regard to diagnostics that they're keeping, you know, the diagnoses going and the scans going the way that they should. I'm not aware that it needs to essentially be either small part of the premises or a large part of the premises. The key here is whether or not it's, we're looking at their regular duties. And again, there's language that's conjunctive about protecting the property of the employer. Also as against other employees, coworkers, and one of the other things that on this record, again, the burden of proof being with the employer here is very paltry that a regular part of the duties of an MRI technician or nuclear technician here is to guard against employees who would be trying to come in and out with this sign on the door that says level four. And in fact, in that, in that jurisprudence, what the board has done, and that's why other employees like judge Millett's hypothetical about your law clerks comes in, the board has consistently found the pure later case, for example, that where employees have duties with regard to security that are no greater than that of other categories of employees. For example, in this case, the manual does say that, you know, folks who are custodians and others besides the MRI and pet techs that are in that area have the responsibility to ensure that, that it is safe, that that does not constitute then a guard of one particular unit here. And so what the regional director did here is important is based on the record that evidence that there was presented made the very reasonable determination here, that there was no showing that these employees were guards such that they should be denied the representative of their choice, which is the, the union in this case. And so if I'm certainly happy to take further questions on the guard issue, I do want to make sure I address all of your questions. However, on the tally of ballots, I was going to say before we turn to the tally, just to there, there's a, there's the allegation that someone, the election monitor at one of the sites was staring at the wall the whole time and reading the newspaper the whole time. Um, I, I, I, I get that no union election is going to be in laboratory conditions, but on a spectrum of like laboratory conditions to, um, unfair conditions, where on that spectrum would you put the one election monitor is not looking at the ballot box, but it is instead staring at the wall and reading the newspaper. Sure. Well, I'd certainly on that spectrum, I put it, um, on the side of, of not warranting a hearing, which is what we're looking at here. If we accept as true, what the proffer was, which is what we, which is the responsibility of the regional director of the board here. The proffer was that it appeared that that's what was happening. Not every single moment of the entire election, but I would put that on in a spectrum lower than a, uh, you know, the laboratory conditions violated, particularly here where there was no proffer that either the observers said that there was any problem, that there was any problem that was going on during that case or that whatever positioning, it was a little confusing in the proffer exactly what the positioning was alleged of the board agent would not be such that should there have been a problem or, um, something brought to her attention that she couldn't address it right away. So on that, it's not a good thing to sit and face the wall for sure. If that is. And again, that wasn't even, I don't think the specific proffer that it was for the entire time. It's that she, the, that the board agent was, you know, what seemed to be, I think for the, uh, for the, the duration of the election, but we, we would absolutely, um, are, you know, here what the board was saying is that even if granting that there was a hearing there, that was not something in this instance that was objectionable. Certainly the cases that there are, um, Sort of setting forth what the parameters would be involved cases. For example, there was an altercation at the ballot box, which took the board's agents attention away, um, for, for, for a while, which you had nothing like that here. And so that that's how we would answer. Um, I, I, I agree. Um, turning to the tally, um, Assume that, um, Assume. I think that there it's imaginable that the, the board could have made a reasoned explanation for doing the tally at waiting to the end of the two days through the tally for efficiency reasons, lack of, of personnel, and they just can't be in every place at every time. But in terms of the explanation, they buried that in a, in a very short footnote, uh, that seems about as on elaborate as, as what this court found to be insufficient, uh, reasoning. And the, um, I forget the real estate one, Nathan Katz, um, And then assume that I think this idea. That a fair election requires you to keep Information away from people, um, is, um, Not assume I'm not persuaded, but I'm, I'm open to this being basically harmless. Um, And in fact, it seems like it, maybe it probably was harmless. So walk me through, I know you don't agree with my two assumptions, but assume those first two things, but tell me how we can still affirm or deny the petition. Sure. Well, it, we, it, with regard to was it or was it not harmless? We don't have any evidence here or any proffer here that property or other than a couple of employees would say they would have liked to have have whatever the information was. And we would of course say that that isn't a demonstration that there was any harm. So I would agree with you there, but in terms of I believe your first two assumptions were that original, it could be reasonable for administrative reasons. And I, I believe I agree with that. And I'd like to add to that. The board's footnote, I think that you're referring to also does not take the place or supplant what the regional director said in terms of why this happened. And therefore I would say to you that the way that the board a lot of times does its decisions and footnotes is to say, we agree with the administrative law judge or in this instance, the regional director. And then the footnote is sort of a supplementary as opposed to the only reason. And so I would say the robust nature of what the RD said is also included here in, in what the, in what the board was finding with regard to why it was administrative. Number one, convenient, but also very important that I don't think we all discussed earlier. And I think this answers your question, judge Walker, the problem with not doing it this way. And the regional director's mind wasn't like in Nathan Katz, a general, Oh, it would be unfair. It's, we would like to prevent objections. And that is very important here because of the prospect of delay. What happens, unfortunately, in a union elections that can take place with huge different units all over the place or in big, or even in small units is that employers seek delay. They have every right to make every objection that they possibly can. But what this RD was doing that the board agreed with, as well as the administrative efficiencies of doing this was let's limit objections that can take place. And in this instance, should there be dissemination in some manner of information that may or may not have been true varying objections. I'm sure the employer could possibly think of that would be objectionable. The regional director wanted to do administrative efficiency as well as let's limit the amount of objections or dissemination that could take place. And so choosing to do that, there is no case law that has been cited that there is any sort of first amendment or other right to know at one facility, particularly here, the paradox let's flip it the other way. The paradox is the employer has been arguing. These are separate individual units that should not do one election. So the board is treating them all separately. And as the RD said, paradox here is then that somehow, even though they're all separate for the employer, they now all have a right to know each unit, what another unit that supposedly has no community of interest with the others is doing. And so, you know, sort of spinning it back to your initial hypothetical about La Mirada, the first one at that first one, there's absolutely, you know, no effect on that, the one who goes first. And so we'd also say given that the discretion, the RD has and using the teaching of Nathan Katz, the RD acknowledged what this court said, which was, Hey, explain yourself. And here we believe that the robust explanation that the RD gave buttressed by what the board said was, was absolutely within the regional director's broad discretion here, fully explained and actually didn't result in any, any harm that can be seen from anything on this record. So here we do, you know, firmly believe his, his discretion was exercised. In the way to balance addressing all the concerns, getting all the votes, getting, you know, everything done administratively, efficiently, and to prohibit there being objections on this part. So Nathan Katz didn't engage in any of this kind of materiality, prejudice, harmless air analysis. What, what's your best argument for why we should. Sure. Well, I would say that in this particular instance, the, the argument would be that the board here was implementing its rules and regulations and in implementing its rules and regulations, it gets broad discretion. And so when we're looking under, you know, this wasn't briefed, but when, you know, you're, we're looking at under, you know, administrative law and that sort of thing, if there's a decision and even if that decision is in some way arbitrary, which again, we strongly view it as not here, then should there be harmless error to the error, be harmless. Then that isn't reason to overturn something like the results of the election in this instance. And so here we would say that the best argument is that nearly because employees may want to know what happened in the other elections, hasn't demonstrated that there was the standard to overturn an election being met here, which is that, you know, there was no free, free and fair election. And I think it's far from that in this case. And I think that so should the court wish to apply harmless error this, this is one of those agency decisions that is within, you know, the decision makers discretion, but that is not done without explanation, without reason or or with any harm. So I think that would be the best argument. You have an, you have a regulation though, which seems to require the board to count and tally the ballots and make them immediately available to the parties. And that seems to reflect policy judgment that more information is better and information sooner is better than information that's later. So why shouldn't we invalidate this just on the ground that it's inconsistent with the regulation? Sure. And I believe your honor is referring to the provision of our, I'll give you the site. It's 29 CFR 102.69 a seven, which says on conclusion of the election, the ballots will be counted and a tally of ballots prepared and immediately made available to the parties. I would say that in the board, in this first instance, interpreting that regulation has under the independent rice case, as well as had the board explained why it was not doing so at the end of each individual one in Nathan cats, this court left open the possibility that the board could do so by explaining it. It's interpretation of that regulation, given all the discretion that the board must give delegate to the regional director for purposes of administering elections all across the country is that in this instance, that was the best way to most fairly vindicate the rights of both the members of the union and most importantly, the employees. And that, that would be why this court should not invalidate on the basis of simply that particular. Regulation says, count the ballots and make the tally immediately available. Right. And they're pretty categorical and it seems very hard to reconcile with any reasoning that, Oh gosh, we should hold back information because it might give rise to objections. Well, I, I understand your concern, your honor. I believe, however, that all the interpretation of this regulation that the board has done, even in instances, which I'm not sure that even the employer would disagree with, for example, in cases where there's a big multi-employer unit and they're doing an election, this kind of thing doesn't happen all the time, but it certainly does happen. And when they're as judge Walker was, was, was positing, certainly in an instance where there isn't any sort of harm that's been, you know, What you're talking about is a gloss on immediately to mean as soon as practicable, right? That's how certainly, yes. That's how the board has interpreted its own regulation. Yes. So that brings us to your administrative efficiency justification. So I'm going to ask you a question. And as I understand it, we're, we're talking about. Talking about elections with 20 or 30 people voting per election. And at least as. The facts on the ground in Irvine suggest. You, you have. Board officials and monitors from both sides on site. So the election's done and you're talking about counting 30 votes. What what's so hard about that? Sure. I don't think there's anything that I would use the word hard about that, but I would say that given the fact that there would be representatives, all of the other elections are overlapping in terms, not all of them, but some of them at the same time and same days, who could be present. But, but, but at every site, there are. Representatives of both parties. And there's a board official who's charged with ensuring that things go fairly. So why. Why couldn't that board official just count the 30 votes. When the election's done. I think what the regional director was thinking is given that they're given that we have so many of these. Elections. And given that there's the possibility of dissemination that could be in some way objectionable and we could have delay. Should there be further objections? Should there be many objections? The best way to be both. It's not just efficient, but also. You know, preclude there to be objectionable behavior with no risk of harm would be to wait until just the very next day. After the last election. And what's the idea that dissemination could be objectionable. Sure. I'm sorry if I dissemination itself of something that is not objectionable isn't objectionable. I didn't mean to say that your honor. What's what's what's the theory of harm. Sure. That's consistent with the regulation that has a preference, if not a requirement for making the tally available sooner rather than later. Sure. There can be a host of objections under board case law that parties can make to two things that go on in elections. And one of the things, I mean, there's a lot of different. A lot of different precedents about when one party either says something that is true or isn't true, whether it's a forgery under the Midland standard, if it's not a forgery, and there's the Van Dorn standard, which talks about whether or not it's still something is disseminated amongst the unit that is such that it could impact a free and fair election. There could be a number of objections to various things that have happened at the election. For example, in this instance, I think you mentioned Irvine. There could be to what the board agent has done. And to the extent that I, that conduct is, or isn't objectionable, if it's spread out, if it is something that is that happens or didn't happen and rumors can go around and affect the laboratory conditions of the election at different places. That's where the dissemination comes in dissemination of objectionable conduct can be a problem. And what the regional director was doing here is balancing, you know, two, you know, 10 different elections on two days with the concern that there could be objections to, you know, to this, what was going on. And given that there, you know, could be that risk in the discretion that the regional director had, the regional director made the determination of held by the board, that this was the acceptable way to run the election. Can I ask a tech? Are you done? Yep. Thanks. It's a technical question is, is the person who counts the votes, the board person who's there for the counting of the votes, the tallying of the votes, just the same person who's there on the scene. The board agent. That's correct. And if there are no further questions on the tally, I just had another question on the topic. Okay. What does it mean for a union to be affiliated with another union? Sure. My understanding is that if a union is affiliated with another union, they there's been a vote of one union to, of, of their members to, to join with the other, the other union. So I guess I should, this reveals my ignorance of exactly what it means, but what it means for purposes of this case is whether the employees know who it is that they are voting. I'm asking the question. You just described affiliation. It sounds not like affiliation, but it sounds like merger. No. Just means we sometimes pool our resources and. Share common information and support each other in different ways, but we're still dependent entities. One thing, if they become less independent, I just don't have any idea and nobody bothered to explain what it was. I agree. Sure. Well, I, I, first off say that. In my limited knowledge, it certainly needs to be something formal in terms of the name. For example, when you have a union and then at the comma, AFL-CIO, something like that, it is certainly formal simply because union share. Resources and those types of things doesn't make a union affiliation. So that that's what I'd say. Number one, and. Independent of this machinist union too. I'm sorry. Could you repeat that question? Sorry. I don't remember all the names of the, is, is the union that was was seeking to unionize these employees. And then it's supposedly affiliated with IAMAW. Is the union that was elected or at the end of the election was a union that was elected still its own union and its own name. Yes. Yes. That's always been the case. There's never been the machinist on any. In any way on the, on the paperwork in this case at all, which again, also distinguishes this case from the other cases on the paperwork. I'm just talking about in reality, this union, it's an independent union. That may be affiliation here. It just means some coordination or shared interests or is it. Right. Your honor, you know, I don't know all. I'm sorry. I don't know all of those answers. And I think that illustrates why it's insufficient for the, the employer to get a hearing with regard to this, given that the employer would essentially be getting the, they don't getting and asking questions to ascertain whether or not there was an affiliation that then the employees would have been concerned about such as not to vote. There are so many different steps along the way, which the board has said over and over a hearing is not for, to suss out that type of speculation. It's if, if assuming all the facts that they have, they have stated, is there a reason to overturn a fair free and fair election? And there simply was nothing of the kind in this case. So affiliation is not, is there is not sort of a term of art in this labor area here. I believe it's a term of art. That's my personal belief. There's a term of art. It should have a definition. Well, in this case, for sure, affiliation was never, ever a problem was never, you know, the employer in this case, in fact, I believe they stipulated to the national union of healthcare workers as the union is as the name on the ballot. And so to the extent, there is any sort of problem again, as I, as I would say, that would, that would have overturned the free course of this election. The burden would certainly have been on the employer to, to present facts that would to present a, an allegation that would mean that there had been an affiliation. And I just don't think that there is such a proper here. Thank you. No further questions. We'll give this. Is it lammers or lemurs lemurs? Or. My vision's not good enough on this little prank. I'm saying it right. I apologize. I'm saying it wrong. We'll give you two minutes. You've got it perfectly right. I would like to use my two units to address some arguments raised by the board very briefly on guard status. The board has pointed you to Boeing. Boeing is an opposite. The reason is because in Boeing, the individuals that issue did not possess guard duties that they regularly performed. They only perform guard duties under the statute at certain points of time. I think it was when employee, other employees were on strike or something like that. It wasn't a constant ever present guard duty. And I think the record will reflect quite clearly that these employees that issue do have to enforce their statutory guard duties in terms of Guard duty.  The board has a greater responsibility than other employees. Moving next very briefly to the question of the Irvine election. I think the offer of proof is very clear and it speaks for itself. I'd encourage you to look at it. The offers of proof are, are all in the appendix at 10 31. They very clearly explained. That the employer's election observer at Irvine. Is a person who is in a position where she can literally watch the board agent for the entirety of a voting session, sit with her back to the voting box and to the room. The fact that the board. That's just not what the proper says. It says that she's in a position where she can't see. Sorry, let me read the property. I think that'll be better. Characterizations. She was seated in a chair that faced a wall. Well, It says that she was turned to the entrance to the room. Almost any chair in a room is going to face a wall. It doesn't say the ballot boxes in between her and the wall. And it says her back was turned to. The entrance to the room. In which the election was taking place. Comma. The room in which the election was taking place in the ballot box. It says that she was turned to the ballot box. That, that, that could mean to me just as much. We're talking about the room that has the election and the ballot box, but it never actually. You think of her back was to the ballot ballot box. It would have said her back was turned to the ballot box, not to the. Entrance to the room. I think. Craftily. Articulated property. Excuse me very carefully. It seems. I don't know.   I don't know what that means. And I don't see. Actually, you could read it one way. Her back was to the ballot box, but you could read another one. Because the one thing it calls out that her back was to, was to the entrance to the room. And that sounds like. After that is defining the room, which room, the room in which the election was taking place in the ballot boxes. And that sounds to me like a substantial issue of material fact, but I don't think it's a substantial issue of material fact. I think it raises a legitimate issue. Upon which the board was obligated. Just by vaguely. Phrasing. And offer. I don't think. With all due respect, I don't think it's vague. I think it raises a legitimate issue. What could she see? What couldn't she see? The offer of proof says she can't see the entrance. She can't see the ballot box. She can't see the. To the ballot box. That's your problem. I respectfully disagree. But I do understand. I think you're, I think your point is well taken. And I think the fact that. Excuse me, one person. My apologies. I'm sorry. Right. Where does it say her backs to the ballot box? I think that. That statement and I'm pulling up the offer of proof for myself here. I'm sorry. One Oh six, three in the joint appendix is what I have. Unless there's something. Unless I have the wrong one. Okay. No, I think you probably have the, I mean, that should be the only one. Her back was turned to the entrance in the room to the room. The room in which the election was taking place. And the ballot box. Right. See, that's a clause, a comma. Clause there that's defining which room. The room with the ballot box. Yeah, that's just the room where the, the room where the election would be taking place in the room with the ballot box would be the same room. So in either event, her back is turned to the room where the ballot box is located. She's not even in the room. With where the election's taking place. Is that what you're alleging? She's either in the room where the election. The election, the ballot box are in the same. The election is occurring in the ballot box or in the same room, right? Yes. The election is occurring in the ballot box or in the same room. I will say, and this is, I don't want to. I don't want to. I just want to clarify something here. Is the argument here that she wasn't even in the room? It's entirely possible. Yes. Oh, no, no, no. It's your proper. You had someone who's described what happened. Is that what you're. I didn't read that at all. I thought it was that she was in the room, but her back was to the ballot box. That's what I thought. All right. So. So here's what I can tell you about these elections. And this is extra record proof. So I understand you won't be able to consider it. These elections took place in very small employee break rooms. Sometimes there wasn't room for everyone to sit in the room. It is entirely possible that this references to someone who has seated where if they were turned in the right direction, they'd be able to see what was happening in the room, but they weren't actually in the room. I do understand that. The offer of proof is what it is. And I do stand by our position that to the extent it is unclear. Given the seriousness of the allegation that the hearing should have been held. I do. If you, if you will allow me just a brief moment more, I do want to speak very briefly to the question of the impounding of the ballots. Very briefly. Okay. When the board, when the board's appellate lawyer says, I think what the RD was thinking there. I think that's the point of the board's appellate lawyer.  I think that's the point of the board's appellate lawyer. I don't want to get into any more detail. But I do want to make it very clear to you in an oral argument, it's evidence that the board does not have a sufficient underlying rationale or basis for the action it took. And in fact, the regional director did not give a robust explanation. He said two things. Administrative efficiency, which is arguably not a basis, but certainly is not one here for all the reasons we have discussed. There were literally board agents at each of these spots who could have counted in some cases, three ballots. And left. So there's no grounds to make an argument about administrative efficiency, no reasonable grounds. And then this question of entirely speculative harm. And this entirely paternalistic approach that the board is going to deviate from its own procedure, which is delineated in its rules to not and not follow that on the  It's a decision that cannot stand for all those reasons. There's no basis whatsoever in this record is, is arbitrary. It's capricious. And it's a decision that cannot stand for all those reasons. The employers ask that these decisions be vacated. All right.
judges: Millett, Katsas, Walker